**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| TIFFANY STAMPER, individually and on behalf of others similarly situated, | CIVIL ACTION |
| Plaintiff, | NO. |
| vs. | |
| ROOT INSURANCE COMPANY, | SECTION: |
| Defendant. | MAGISTRATE: |

**COMPLAINT**

CLASS ACTION

Tiffany Stamper, an individual the full age of majority, citizen of the State of Louisiana, and resident of the Parish of East Baton Rouge, individually and on behalf of all others similarly situated, brings this suit as a class action against Defendant Root Insurance Company, and respectfully represents as follows:

1. Defendant in this cause of action is Root Insurance Company, an Ohio corporation with its principal place of business in Columbus, Ohio, and who may be served through its registered agent for service of process at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

2. Defendant is liable to Plaintiff and all others similarly situated for all elements of damages allowed by Louisiana law, whether past, present, and/or future damages, in an amount that is just and reasonable in the premises.

## NATURE OF THE ACTION

3. This is a class action on behalf of Plaintiff and all other similarly situated claimants in Louisiana who received a payment for loss of a totaled vehicle from Defendant based on the "Actual Cash Value" or "ACV" of the vehicle.

4. Plaintiff was the named insured under a Root automobile insurance policy issued for private passenger auto physical damage coverage (the "Insurance Policy"), including collision and comprehensive coverage, that requires payment of "Actual Cash Value" or "ACV" in the case of a total loss of the insured vehicle.

5. In the event of a "total loss" to an insured vehicle—i.e., where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the ACV of the vehicle. Attached as <u>Exhibit A</u> is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

6. Under Louisiana law, when an insurer settles a property damage claim based on ACV, it is required to comply with the methodologies for calculation of ACV set forth in Louisiana Revised Statutes 22:1892(B)(5).

7. Under its insurance Policy, Defendant has a duty to pay, and represents that it will pay, the ACV of the vehicles pursuant to the methodologies provided in 22:1892(B)(5). When calculating ACV for total-loss claims, it is improper for an insurance company to undervalue and underpay claims by applying arbitrary adjustments.

8. Defendant violates these obligations by applying misleading and arbitrary adjustments that have no factual basis on the value or condition of the total loss vehicles. Upon information and belief, Root applies such deductions with the sole purpose of arbitrarily reducing

2

the value of the vehicles and ultimately reducing its claims obligations to its insureds.

9. The result is a valuation that fails to comply with Louisiana law, fails to properly calculate ACV, and fails to properly indemnify Plaintiff and other insureds who suffer from total losses. These valuation practices are unfair business practices and result in a breach of insurance contract.

## JURISDICTION AND VENUE

10. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Louisiana. Defendant is a Ohio Corporation that has its corporate headquarters in Ohio, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Louisiana.

11. Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.00.

12. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts business in this District.

## THE PARTIES

*Plaintiff*

13. At all times relevant to this action, Plaintiff Stamper was and is a citizen of the State of Louisiana, domiciled in the Parish of East Baton Rouge.

*Defendant*

14. At all times material hereto, Defendant Root was and is an Ohio corporation, headquartered at 80 East Rich Street, Suite 500 Columbus, OH 43215, and authorized to provide insurance in the State of Louisiana.

## FACTUAL BACKGROUND

A. **The Policy and Statute at Issue**

15. Under Root's auto insurance Policy, in section D entitled "Coverage for damage to your auto," Root states that it will pay for loss (or property damage) to a covered auto. Exhibit A, p. 14 of 26; p. 1 of 26 (defining "property damage" as "physical injury to, destruction of, or loss of use of tangible personal property")

16. However, Root's obligation for damage is not limitless. When the cost of repairing the damage exceeds the value of the vehicle, Root determines that the vehicle is a "total loss." In the event of a total loss, Root limits its liability to the lesser of ACV or the cost to replace or repair the damaged property. *Id.* at p. 18 of 26.

17. Louisiana law is clear that insurance policies must be interpreted in compliance with statutory and common law limitations and prescriptions. Louisiana statutes regulate the adjustment of total loss motor vehicle insurance claims by insurance companies and restrict the type of allowable deductions for betterment and appreciation. Thus, Root's freedom to apply deductions for depreciation and betterment is limited by Louisiana law.

18. To the extent the Policy is inconsistent with Louisiana law, the Policy is conformed to comply with it.

19. Adjustment of total-loss motor vehicle accidents is addressed in Louisiana Revised Statutes 22:1892(B)(5) and (6). Subsection (5) addresses the allowable methodologies for valuation of a total-loss vehicle, from which Subsection (6) permits deductions to be taken based on depreciation/betterment. The statute does not otherwise permit the application of any other deductions.

20. Insurers are permitted three methods by which to adjust and calculate ACV.

21. Under La.R.S. 22:1892(B)(5)(a), an insurer is allowed to utilize a "fair market value survey conducted using qualified retail automobile dealers in the local market area as resources."

22. Under La.R.S. 22:1892(B)(5)(b), an insurer may determine "retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public."

23. Under La.R.S. 22:1892(B)(5)(c), an insurer may rely on a "qualified expert appraiser selected and agreed upon by the insured and insurer."

24. Finally, the statute specifically governs reductions based on betterment and depreciation, regardless of the method used. "An insurance policy covering damaged property may allow for depreciation." If a deduction for depreciation is applied, "the insurer shall provide a written explanation as to how the depreciation was calculated." Moreover, deductions based on depreciation "shall be reasonable and based on a combination of objective criteria and subjective assessment, including the actual condition of the property prior to loss." La.R.S. 22:1892(B)(6).

25. Root fails to comply with any of these methodologies when settling total-loss claims.

5

### B. Root's Adjustment of Plaintiff's Total Loss Claim

26. On June 28, 2020, Plaintiff sustained damage to her insured 2006 Mercedes-Benz E-Class E350 and made a made a claim under her Root insurance Policy for damage to her vehicle.

27. Plaintiff paid all necessary premiums and Plaintiff's coverage was active at the time she made a claim. Root accepted premium payments from Plaintiff for the Policy.

28. Plaintiff timely notified Root of the loss and otherwise performed all conditions precedent under the Policy.

29. After inspecting Plaintiff's vehicle, Root declared Plaintiff's vehicle a total loss, and elected to invoke its liability cap and to pay Plaintiff the ACV of the vehicle (as opposed to the greater amount to repair or replace the vehicle) through a cash settlement.

30. Root determines the ACV of total loss vehicles using a software platform called "CCC One" and a "Market Valuation Report" that is derived from this platform. The platform was designed by a third-party, CCC Information Services, Inc. ("CCC"). A copy of Plaintiff's Market Valuation Report is attached as Exhibit B.

31. The CCC One software and platform is designed for and marketed to insurance companies.

32. Root contracts with CCC, and CCC allows Root to access and use the platform and Market Valuation Reports to adjust and settle total loss claims.

33. As a uniform and standard business practice, Root uses the CCC platform to determine the ACV of every total loss vehicle.

34. Root begins its evaluation by first inspecting and evaluating the condition of Plaintiff's vehicle. Root provided notes based on this inspection and allowed for dollar

6

adjustments. (Exhibit B. p. 6). These dollar adjustments are used to account for the depreciation and betterment of Plaintiff's vehicle.

35. Root's methodology (through its vendor CCC) next identifies comparable vehicles—usually between 5 and 12—offered for sale in the general market area of the total-loss vehicle, i.e., vehicles of the same year, make, and model. Root then adjusts sale price of each individual vehicle to account for differences between the comparable vehicle and the total-loss vehicle. For example, if the comparable vehicle has less mileage than the total-loss vehicle, Root reduces the sale price of the comparable vehicle to account for the fact that vehicles with more mileage have less value.

36. Defendant also applies an "options" adjustment, to account for differences in the optional equipment between the comparable vehicle and the total-loss vehicle. For example, if the total-loss vehicle has climate control but the comparable vehicle does not, Defendant, through CCC, would increase the price of the comparable vehicle to account for such difference (or vice versa).

37. These adjustments are based on known information about the comparable vehicles (such a mileage and vehicle packages) and are used to ensure the vehicles are comparable to vehicles of the same milage and type as Plaintiff's vehicles. Plaintiff does not challenge Root's adjustments based on milage and package options.

38. Crucially, Root next also applies what it calls a "Condition Adjustment" to the list prices of the comparable vehicles. Notably, on Plaintiff's Market Valuation Report, the "Condition Adjustment" applied to each of the comparable vehicles was exactly the same and amounted to a $744.00 deduction to the list price of the comparable vehicles. This, in turn, resulted in a $744.00 reduction in the estimated value of Plaintiff's total-loss vehicle.

7

39. Defendant's so-called "Condition Adjustment" is not based on the condition of the comparable vehicles or the condition of the total-loss vehicle. Root did not inspect nor investigate the condition of the comparable vehicles and has no basis by which to determine whether the comparable vehicles were in precisely the same (and better) condition. These Condition Adjustments applied to the prices of comparable vehicles are not based on depreciation or betterment and are not based on known information about the comparable vehicles.

40. In Plaintiff's case, by applying the exact same negative $744.00 "Condition Adjustment" to each comparable vehicle considered in its calculation, Root abandoned even the pretext that the adjustments are "reasonable and based on a combination of objective criteria and subjective assessment, including the actual condition of the property prior to loss." La.R.S. 22:1892(B)(6)(e).

41. Plaintiff's Market Valuation Report states that "[t]he Condition Adjustment sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section" (Exhibit B. p. 7). This statement constitutes an admission that Root not deriving the ACV of the total loss vehicle from its "retail cost," in violation of La.R.S. 22:1892(B)(5).

42. Root's "Condition Adjustments" applied to the comparable vehicles are arbitrary and capricious and used by Root solely to deflate the value of Plaintiff's vehicle in violation of the Policy promise to pay ACV and in violation of § 22:1892(B)(5) and (6). For example, in Plaintiff's case, Root's use of the Condition Adjustment resulted in an adjusted valuation of below the estimate value of the vehicle provided by the National Automobile Dealers Association ("NADA")—a leading industry source for the valuation of used vehicles.

8

**C. Root's Condition Adjustments Result in Total Loss Payments that Violate Louisiana Law**

43.     By applying the Condition Adjustments to the comparable vehicle in calculating claim payment for Plaintiffs and all Class members, Root (1) fails to use one of the methods prescribed by the Louisiana total loss statute, and (2) fails to follow the statute's regulation on deductions.

44.     La.R.S. 22:1892(B)(5)(a) requires the use of a "fair market value survey conducted using qualified retail automotive dealers in the local market area as resources." Root's use of the CCC methodology is not a "fair market value survey." Even if it were a proper survey conducted by qualified automotive dealers—it is not— Root artificially lowers the values of the comparable vehicles through the contrived Condition Adjustment, resulting in something other than "fair market value" of the vehicles.

45.     La.R.S. 22:1892(B)(5)(b) requires the determination of the "retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public. Root does not comply with (b) for two reasons. First, Root does not derive the value of Plaintiff's and Class members' vehicles from "retail cost" because it artificially deflates the "retail cost" of the comparable vehicles by applying made-up Condition Adjustments to those vehicles. Second, the CCC methodology used by Root is not a "generally recognized used motor vehicle industry source." Rather, it is an insurance source used solely by insurance companies. It is not available to the public, is marketed solely to insurance companies, and is not what the legislature intended when drafting La.R.S. 22:1892(B)(5)(b).

46.     La.R.S. 22:1892(B)(5)(c) requires the use of a qualified appraiser to determine the value of the vehicle. CCC is not a qualified appraiser, and Root failed to otherwise consult with an

9

appraiser in determining the ACV of Plaintiff's vehicle. Additionally, Root—as a general business practice—does not use qualified appraisers to determine the ACV of total loss vehicles.

47. Finally, even if Root begins its calculations with a methodology allowed under Louisiana law, the Condition Adjustments it applies to comparable vehicles are functionally depreciation deductions that are not "reasonable and based on a combination of objective criteria and subjective assessment, including the actual condition of the property prior to loss," La.R.S. 22:1892B(6)(ii)(e), and are therefore improper.

48. Root's valuations of Plaintiff's vehicle and the vehicles of all of its other insureds who had their ACV reduced by Root's use of unfair and unreasonable Condition Adjustments fail to comply with any approved methodology under Louisiana law and result in valuations that are less than the ACV of their vehicles.

## Class Action Allegations

49. Plaintiff brings this action on their own behalf and as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3), on behalf of the following Class, preliminarily defined as follows:

> All persons: (a) who insured a vehicle for physical damage coverage under an Louisiana automobile insurance policy issued by Root, (b) who made a claim under the policy comprehensive and/or collision coverage, (c) whose claim was determined to be a covered total loss, and (d) for whom Root applied a "condition adjustment" to the list price of comparable vehicles.

50. Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during this litigation.

51. **Numerosity:** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believe that there are thousands of Class members, the precise number is unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

52. **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. whether Defendant applies a Condition Adjustment to comparable vehicles when determining an insured vehicle's ACV in the settlement of total loss claims;

   b. whether Defendant's use of the CCC methodology when valuing total loss vehicles complies with Louisiana law;

   c. whether Defendant's application of a Condition Adjustment to comparable vehicles when determining an insured vehicle's ACV in the settlement of total loss claims constitutes a breach of contract;

   d. whether Defendant's application of a Condition Adjustment to the values of comparable vehicles unfairly lowers the actual cash value of total-loss vehicles;

   e. whether Defendant's application of a Condition Adjustment to comparable vehicles is reasonable and based on objective criteria and subjective assessment.

53. **Typicality:** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members were all similarly affected by Defendant's application of a Condition Adjustment to comparable vehicles and associated reduction in ACV. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

54. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with and are aligned with the interests of the other Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to include sales tax and transfer fees in total loss situations, and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

55. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

## COUNT I: BREACH OF CONTRACT

56. Plaintiff repeats and realleges the paragraphs 1 through 55 as if fully set forth herein.

57. Plaintiff brings this claim individually and on behalf of the other members of the Class.

58. Plaintiff and each of the other Class members was parties to insurance contracts with Root, with terms set forth in the Root Policy.

59. Plaintiff and each of the other Class members' insurance contracts are governed by Louisiana law.

60. Plaintiff and each of the other Class members made claims under their insurance contracts, which Root determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

61. Root invoked its ACV limit of liability clause and purported to pay Plaintiff and each of the other Class members the ACV of their total loss vehicles.

62. Root breached its policy obligation to pay ACV by artificially lowering the value of Plaintiff's and Class members' vehicles by applying an arbitrary and capricious "Condition Adjustment" to the prices of comparable vehicles.

63. By failing to pay the full amount of ACV, as required by the Policy and Louisiana law, Defendant breached its contract with Plaintiff and each of the other Class members.

64. As a result of the contractual breaches, Plaintiff and each of the other Class members have been damaged in that they received less than what was promised in their contracts,

and they are entitled to actual damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT II: VIOLATIONS OF LSA-R.S. 22:1793

65. Plaintiff repeats and realleges allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

66. Plaintiff brings this claim individually and on behalf of the other members of the Class.

67. As set forth herein, Defendant knowingly and/or intentionally undervalued total-loss vehicle property damage claims. Defendant did so notwithstanding its knowledge that use of legitimate used motor vehicle sources would have resulted in an accurate and fair valuation for its insureds.

68. The conduct set forth herein violated Defendant's duties of good faith and the requirements prescribed by Louisiana law.

69. Defendant's utilization of the CCC valuation system violated LSA-R.S. 22:1892.

70. As to Plaintiff and members of the putative Class, Defendant failed to fairly and promptly adjust claims and failed to make a reasonable effort to settle claims with its insureds, which constitutes a violation of its good faith duties.

71. Similarly, Defendant failed to pay the amount of claims due its insureds within the statutorily-prescribed time of sixty days. Moreover, such failure, as outlined herein, was "arbitrary, capricious, or without probable cause."

72. As such, Plaintiff and members of the Class are entitled to all damages, penalties, attorney fees, costs, and relief permitted by law and deemed by this Court to be just and proper.

## COUNT III: PENALTIES AND EXPENSES OF LITIGATION

73. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

74. Plaintiff brings this claim individually and on behalf of the other members of the Class.

75. Defendant has acted in bad faith and caused Plaintiff and Class Members unnecessary trouble and expense by failing to comply with the clear requirements of its policies and Louisiana law.

76. Plaintiff and Class Members are entitled to, and expressly pray for, expenses of litigation, all allowable penalties, and all attorneys' fees and costs pursuant to La. R.S. §22:1892(B)(1), including 50% of damages found or $1,000.00.

## COUNT IV: VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING

77. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

78. Plaintiff brings this claim individually and on behalf of the other members of the Class.

79. Defendant's practice of applying "Condition Adjustments" is capricious, illegitimate, and in violation of its obligation, contractually and under La. R.S. 22:1973, to abide by its duty of good faith and fair dealing.

80. To the extent that Defendant has any discretion in how to apply adjustments, that Defendant always exercises such discretion to its own advantage and to its insureds' disadvantage is a violation of its duty of good faith and fair dealing.

15

81. Defendant also violates its statutory duty of good faith and fair dealing by misrepresenting the Condition Adjustments as a factual basis to lower the value of comparable vehicles when, in fact, there is no factual basis to apply the Condition Adjustments. *See* La. R.S. 22:1973B.(1).

82. As a result, Plaintiff and members of the putative Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

## **Jury Demand**

83. Plaintiff respectfully demands a jury trial on all matters triable by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff, individually and on behalf of the other Class members, respectfully pray that this Complaint be deemed good and sufficient, and that, after due proceedings be had, the Court enter judgment in favor of Plaintiffs and against the Defendant as follows:

a. An order certifying the proposed Class as requested herein, appointing Plaintiff as Class Representative, and appointing the undersigned as Class Counsel;

b. An award of compensatory damages to Plaintiff and the other Class members against Defendant, as well as pre- and post- judgment interest;

c. Statutory and/or bad faith penalties and/or damages;

d. An order enjoining Defendant from continuing the illegal practices alleged herein, and for other injunctive relief as is proven appropriate in this matter;

  e. An award of attorney's fees, court costs, and expenses;

  f. An order providing such other and further forms of relief as this Court deems just and proper.

  This 9th day of February, 2023.

               Respectfully submitted,

               */s/ Stephen J. Herman*
               Stephen J. Herman, La. Bar No. 23129
               **HERMAN HERMAN & KATZ, LLC**
               820 O'Keefe Avenue
               New Orleans, Louisiana 70113
               Telephone: (504) 680-0554
               Fax No. (504) 561-6024
               E-Mail: sherman@hhklawfirm.com

               Amy L. Judkins, Esq.*
                 Florida Bar No. 125046
               Edmund A. Normand, Esq.*
                 Florida Bar No. 865590
               Jacob L. Phillips, Esq.*
                 Florida Bar No. 120130
               **NORMAND PLLC**
               3165 McCrory Place, Ste. 175
               Orlando, Florida 32803
               Telephone: (407) 603-6031
               E-Mail: amy.judkins@normandpllc.com
               E-Mail: jacob.phillips@normandpllc.com
               E-Mail: ed@normandpllc.com
               E-Mail: ean@normandpllc.com

Andrew J. Shamis, Esq.*
  Florida Bar No. 101754
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: (305) 479-2299
E-Mail: ashamis@shamisgentile.com

Scott Edelsberg, Esq.*
  Florida Bar No. 0100537
Christopher Gold, Esq.*
  Florida Bar No. 088733
Adam Schwartzbaum, Esq.*
  Florida Bar No. 93014
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (786) 289-9471
Fax No. (786) 623-0915
E-Mail: scott@edelsberglaw.com
E-Mail: chris@edelsberglaw.com
E-Mail: adam@edelsberglaw.com

*Counsel for Plaintiff, Tiffany Stamper
and the Proposed Class*

**\*** motion for *pro hac vice* admission forthcoming